Judge Marshall

delivered the Opinion of the Court.
So far as the complainant Hill seeks the aid of the Court of Chancery to compel a conveyance, or any further assurance from Bryants’ Heirs, in pursuance of the contract of their ancestor with Buford, we have no doubt that said heirs may successfully resist such an effort on the ground that the contract thus sought, to be enforced, was infected with champarty. And as this matter is set up by them as an obstacle to the relief sought by Hill, and as the proof conduces to sufficiently establish the champerty as alleged by them, any decree directing them to convey the land which Hill sought to subject to the satisfaction of his debt against Buford's heirs, and which was the subject of the champertous contract, might have been erroneous.
But, as there is no decree against them for a conveyance, they have no interest in the decree for selling the land as the land of Buford’s heirs, the same not being in their possession. Nor have they in fact any interest in, or any right to complain of, any part of the decree, except so much as purports to set aside and annul their claim; which is in effect a denial of the prayer of their cross bill (to vacate and annul the deed of their ancestor to Buford,) and a final disposition of that part of the suit, The prayer for the annulment of the deed, or a surrender of the title, is based principally upon the champertous nature of the contract and consideration on which it was founded. No other material allegation in support of their prayer being sufficiently established by the evidence, the question is, whether, as complainants (in which attitude alone there is any litigation between them and Buford’s *68 heirs, or those claiming under them,) they are entitled to the relief sought in their cross bill.
The heirs of Bryant can occupy no better condition than their ancestor, in whose right they claim. They must be regarded as if they were actually participant in the illegal transaction, and can take advantage of that illegality no otherwise than he could. Conceding that there may be cases in which the Chancellor might interpose at the prayer of one party to a champertous contract, for the purpose of vacating, or otherwise relieving him from, his executed conveyance founded on such contract—a point which we do not feel called on now to decide—the question is whether this is a case in which there ought to be any such interposition.
The complainants in the cross bill are not invoking the aid of the Chancellor to protect them from the operation of the deed, in any action brought or to be brought, against them, or by them, for the land. They are not in possession, and neither they, nor their ancestor, appear to have been in possession since the date of the deed. On the contrary, the possession seems to have been held under the deed for many years. The deed itself bears date in December, 1812, and was then regularly acknowledged and recorded. The grantor lived for several years afterwards without disturbing the grantee in his title or claim of ownership, and more than twenty years had elapsed when the complainants, for the first time, distinctly alleged the champerty as a ground for vacating the deed, or declaring it void.
We do not know that any peculiar favor should be extended to persons out of possession, who seek, directly or indirectly, to gain the possession of land on the ground that it is held under their own champertous deed. The nature of their claim is certainly not calculated to exempt them from those unfavorable presumptions to which other claimants would be subject. And even conceding that there may be cases in which the grantors of land might come into equity to obtain such relief as is now sought, against their own deed, we think that, considering the great lapse of time and the other circumstances *69 which have been mentioned, the Chancellor ought not in the present case to interfere between the parties.
Wherefore, the decree denying the right of Bryant’s heirs to the relief sought in their cross bill, is affirmed.