## Taylor, et al. v. Hurst, Trustee, et al.

(Decided November 28, 1919.)

### Appeal from Bell Circuit Court.

1. Parties—Specific Performance.—In a suit for specific performance the vendee's assignee or transferee is a necessary party plaintiff.
2. Parties—Real Party in Interest.—The real party in interest, within the meaning of the Civil Code, sections 18 and 21, is the party who will be entitled to the benefits of the action, upon a successful termination thereof, the one who is actually and substantially interested in the subject matter as distinguished from one who has only a nominal interest therein.
3. Parties—Real Party in Interest.—The test of whether one is a real party in interest within the meaning of the statute is, does he satisfy the call for the person who has the right to control and receive the fruits of the litigation?

JAMES M. GILBERT, C. I. DAWSON and J. M. ROBSION for appellants.

N. R. PATTERSON, COLSON & HURST and JOHN FITZPATRICK for appellees.

Opinion of the Court by Judge Quin—Reversing.

July 5, 1902, Harrison Taylor (now deceased) and his wife entered into a contract with appellees, C. Hurst as trustee, whereby the Taylors, in consideration of the sum of four dollars per acre, agreed to sell and convey to Hurst, trustee, the mineral rights in about 3,000 acres of land in Knox county.

It is provided in said contract that:

"The party of the second part is to forfeit and lose all payments made on said land and this obligation is

to become null and void unless all of the purchase money is paid within six months from date hereof, and in case the second party fails to pay one-half the aforesaid purchase money within sixty days from date, then and in that event this obligation is to become null and void; otherwise to remain in full force and effect.''

December 20, 1902, in another paper signed by Harrison Taylor, it is recited that Hurst, trustee, had assigned his interest in said contract to J. J. Gibson, trustee, and that Gibson had paid the sum of $390.00 on the purchase price.

Gibson was to have the land surveyed and the balance of the purchase price to be paid by May 1, 1903. This second paper was attached to the first one. On the margin of the original contract is this endorsement signed by Gibson:

"Without recourse on me in any event I hereby assign to C. Hurst and J. C. Slusher all right, title and interest of mine in the within bond November 10, 1906."

Both writings were recorded July 30, 1906.

This suit was filed by appellees seeking the specific performance of the foregoing instruments. From a judgment granting the relief prayed for this appeal is prosecuted.

Many reasons are assigned for a reversal. We find one of them meritorious, viz.: that appellees have not shown any right to maintain this suit.

In the original title bond Hurst was trustee for himself, J. J. Gibson and J. C. Slusher. In the extension, Gibson was trustee for C. Hurst, J. C. Slusher, Vincent Boreing and D. B. Logan. Boreing, Gibson and Logan disposed of their interests, but the exact dates of these transfers or assignments do not appear. Slusher transferred his interest to Robert Vanbever, he thinks this was after the present suit was filed. About the same time W. G. Colson purchased a one-half interest in the property and Hurst disposed of his interest to Vanbever.

The facts as to the status of the title to or the interest in this contract are gleaned from the depositions of appellees. They show rather conclusively they have no interest in this controversy, and either the special demurrer or the motion to dismiss, because plaintiff (appellees) were not the real parties in interest, should have been sustained.

Since we have reached the conclusion that for this reason a reversal must be had, a few excerpts from the second deposition of appellee Hurst on this question might not be inappropriate. Referring to certain letters written to Gilbert Taylor, Hurst says:

"Yes, I told them all about it. J. C. Slusher and Mr. Colson and I think, Mr. Vanbever. I sold my interest to Mr. Vanbever and I was trying to get him and Mr. Colson to put up the money and settle this law suit as indicated in these letters there, but they did not do it, as I had sold out to Vanbever. . . .

"Q. But you do remember, as you claim, of talking with Gilbert Taylor and having an arrangement with him whereby he was to bid off the land of Emmett Taylor that was to be sold at the Knox circuit court? A. I didn't have any arrangement but he told me he was going to bid it off and Smiths had agreed with him they would sell the land when they got the title clear for so much and I told him if they would do that, I would try to get Mr. Colson and Vanbever to take it and settle the suit Q. And I believe you say when all this was taking place you had no interest in this land at all? A. I had none in any way, except Vanbever owed me some money, I had transferred my interest to Vanbever, but all the money had not been paid. Q. Didn't you swear in answer to Mr. Patterson's question, that at the time you had no interest in the land? A. Yes, sir; I had no interest except in getting my money. I had sold out to Robt. Vanbever. . . . Q. Haven't you any idea when that transaction took place? A. Well, I don't know that I could state exactly, but I know that I sold out to Vanbever because I was trying to work this deal to get Vanbever and Colson to take this matter over and make this deal with Gilbert Taylor, because I thought it would be better to settle the law suit than to go on with the suit. . . . Q. How much did he pay them? A. I don't remember, I have not had a statement. He claimed to have paid some on that. I sold him some other land at that time and I sold him my interest in the mineral right in this Taylor land and he was to give me a thousand dollars profit. I wish you would call Mr. Vanbever up and have him come down here and bring that title bond. If he has the title bond we can get it, if not, we can get it from the records. Q. I believe you say that the arrangements as you now re-

member between you and Mr. Vanbever were that if you cleared this title and won the suit, he was to pay the thousand dollars. A. Not if I cleared it; he was to clear it himself and pay the expenses. . . . Q. Who is to pay the counsel fees and cost of this litigation under your contract and arrangement with Mr. Vanbever? A. I think Mr. Vanbever was to pay it and Mr. Colson together. In the first place J. C. Slusher and I sold certain interest and had a contract or title bond with W. G. Colson; afterward Mr. Slusher and I both sold out our interest that we retained under the Colson contract to Robt. Vanbever and I can't remember just all of the bond now. It has been some time and have not read it for a long time. . . . Q. Did you and Mr. Colson enter into this agreement with Mr. Vanbever? A. No, sir; just me and Mr. Slusher. Slusher and I sold our interest to Vanbever. As I understand it, Mr. Colson owns one-half and Mr. Vanbever one-half interest in this law suit.''

Civil Code, secs. 18 and 21 provide as follows:

Section 18. ''Every action must be prosecuted in the name of the real party in interest, except as provided in section 21.''

Section 21. ''A personal representative, guardian, curator, committee of a person of unsound mind, trustee of an express trust, a person with whom or in whose name a contract is made for the benefit of another, a receiver appointed by a court, the assignee of a bankrupt, or a person expressly authorized by statute to do so, may bring an action without joining with him the person for whose benefit it is prosecuted.''

It is not claimed the contract sued on was made or that appellees are suing for the use or benefit of Colson or Vanbever. They are not shown to have had any interest in the contract at the time of its execution. It was some years later, probably between 1908 and 1912, that they purchased the interests of Slusher and Hurst. Unfortunately the agreeements between these parties are not in the record and it is impossible to tell just when these transactions occurred.

The real party in interest within the meaning of the Code provision is the party who will be entitled to the benefits of the action upon a successful termination thereof; one who is actually and substantially interested in the subject matter as distinguished from one who has

only a nominal interest therein. 15 Ency. Pl. & Pr. 710; 33 Cyc. 1558.

As said in Gross v. Heckert, 120 Wis. 314, 97 N. W. 952:

"The test of whether one is the real party in interest within the meaning of the statute is, does he satisfy the call for the person who has the right to control and receive the fruits of the litigation?"

The assignee of a partial interest in the contract is not a necessary party to a suit for specific performance by the vendee, but where the vendee has assigned his entire interest the assignee is a necessary party. 36 Cyc. 760; Craver v. Spencer, 40 Fla. 135, 23 Sou. 880; Brewer v. Dodge, 28 Mich. 359. In the latter case the court says:

"It appears from complainant's own showing that in June, 1870, he conveyed the premises in dispute to one Charles E. Ritson. Ritson never made himself a party to the suit. By that conveyance complainant ceased to take any further interest in the controversy. If any one was injuriously affected by any subsequent proceedings, it was Ritson, and not complainant. It was no concern of his after he has sold out all his interest. A court of equity must have the real parties before it, and will not permit a party who has voluntarily divested himself of any claim on his own behalf, to continue litigating. As soon as a complainant assigns his rights, the suit, as to him, ceases, and becomes as defective for want of a complainant as if it had abated by his death. It can only be restored to activity by bringing the rights of the assignee before the court."

And as said further in 30 Cyc. 47:

"As a rule, whenever the assignment of a chose in action vests the assignee with the ownership of the claim, the action is to be brought in the name of the assignee, as the real party in interest, and this whether the title of the assignee be regarded as legal or equitable. The question does not relate either to the formal sufficiency of the assignment or to the existence of equitable grounds."

And on page 48 of the same volume:

"The rule of the Codes noticed above is not merely content with the beneficial ownership of the chose, but unlike the statutory rule now or formerly found in several states, it demands the beneficial ownership. The

effect of the assignment being to divest the assignor of his ownership, an action on the chose can no longer be brought in his name, either alone or for the use of the assignee. Nor is the rule affected by the fact that the assignor, in making the assignment, has expressly authorized an action in his name upon the assigned chose in action, or has expressly stipulated that if an action is necessary he will bring it in his own name and turn over all the proceeds to the assignee. Nor will the fact that the consideration for the assignment of the chose has failed permit an action in the name of the assignor, unless he has recovered the title.''

In Bassett v. Inman, 7 Colo. 270, 3 Pac. 383, the assignee of a note and account was held to be the real party in interest, though the consideration of the assignment may have been a payment to the assignor after recovery in the suit by the assignee. See also Hutchins v. Weems, &c., 35 Mo. 285; Pomeroy's Eq. Juris, 4 ed., sec. 1274.

In Craver v. Spencer, *supra,* the court says:

''A contract, of which specific performance was sought in this case, having been absolutely and irrevocably assigned to Cox, he was an indispensable party complainant, and without him or his proper representatives before the court, no final decree could properly be rendered.''

Lampkin v. M. & O. R. Co., 146 Ky. 514, 142 S. W. 1037, was a suit to recover damages for injuries to a shipment of hogs, and from a verdict for defendant Lampkin appealed. After quoting sections 18 and 21 of the Civil Code the court says:

''Lampkin is not the real party in interest; for the amended petition shows that he sold the hogs to Holt, and that any judgment that is recovered is to be for the benefit of Holt. Section 21 has no application. Lampkin is not the trustee of an express trust or a person with whom or in whose name a contract is made for the benefit of another. . . .

''Under this section (Civil Code, sec. 19) it was proper that Lampkin should be a party as plaintiff or defendant, but Holt is a necessary party plaintiff, as he is the real party in interest. The meaning of section 19 when read with section 18 is that *the action must be brought in the name of the assignee, the real party in interest,* but if the assignment is not authorized by statute

the assignor must be a party as plaintiff or defendant. The Code of Practice governs all civil cases. By section 1, civil cases are actions or special proceedings. An appeal to this court is regulated by the provisions of the Code of Practice, and must be prosecuted by the real party in interest. So far as we can know Holt, the real party in interest, may not desire this appeal prosecuted. Lampkin has no interest in the action except to recover a judgment for Holt, and as Holt is not appealing from the judgment refusing him any relief, the appeal must be dismissed.''

And so in an abstract opinion in Garrigus, &c. v. Blakey, 7 Rep. 677, we find:

''In this action by G., 'for the use and benefit' of W., the plaintiff G. states that he 'brings this suit for the use and benefit of W.' and after setting out his alleged cause of action says 'that for a valuable consideration he transferred the same to his co-plaintiff, who now owns it,' but not designating W. as the person meant by co-plaintiff. The prayer is 'that he and his co-plaintiff be substituted' to certain rights under a mortgage, 'and they pray judgment,' etc. The names of G., and W., are signed to the petition 'by' an attorney.'' And it was held that it appearing on the face of the petition G had ''no interest in the matter and W. is not a plaintiff, the court properly dismissed the petition. But even if W. be considered a party to the petition, G., having no interest, can not prosecute an appeal alone.''

We do not deem further citation or comment necessary. Whether Hurst and Slusher had such an interest in the contract sued on as made them proper parties, it is certain that Colson and Vanbever were the persons actually and substantially interested in the subject matter of the controversy, the ones to be benefited by the judgment, hence were necessary parties, and the court erred in failing and refusing to require them to be made parties.

Wherefore the judgment is reversed for further proceedings consistent with this opinion.